### TYNER et al. v. LA COSTE.
### (No. 1173—5158.)

Commission of Appeals of Texas, Section A. Feb. 13, 1929.

686

James H. Rachford, of Beaumont, for plaintiffs in error.

E. L. Nall, King & Jackson, Leon Sonfield, and A. L. Calhoun, all of Beaumont, and J. W. Williams, of Port Arthur, for defendant in error.

HARVEY, P. J. In this suit of trespass to try title, the plaintiffs in error, Emma Tyner and Mary B. Brown, seek to recover of John La Coste a tract of 79 acres of land situated in the south end of the tract of 735 acres which is hereinafter mentioned. The trial court instructed a verdict in favor of the defendant in error, and judgment was entered accordingly. The Court of Civil Appeals affirmed such judgment. Writ of error was granted by the Supreme Court.

The material facts as established by the uncontroverted evidence are substantially as follows:

On October 28, 1865, John T. Johnson and Samuel Remley were partners in the sawmill business. They owned, as part of the partnership assets, a tract of 735 acres of land in the Thomas F. McKinney survey in Jefferson county. The boundary line of this tract began on the south bank of the Neches river; thence ran south 6,410 varas; thence east 653 varas; thence north 6,352 varas to the river; thence up the river to the beginning. On the date above mentioned, October 28, 1865, Samuel Remley, acting for the partnership and in its name, executed a promissory note to John J. French for a debt which was contracted at the time in behalf of the partnership. He likewise, on the same date, executed in behalf of the partnership a mortgage on the tract of 735 acres of land to secure the payment of said note. At the time this mortgage was executed, Johnson and his wife and minor children were residing and had their home on a portion of said tract. His improvements consisted of the family dwelling house and appurtenant inclosures and outhouses. Remley, at the time, also resided with his family on another portion of the tract; his improvements consisting of his family dwelling house, outhouses, etc. The partnership was, by agreement of the partners, dissolved in the year 1867. On March 28, 1868, John J. French brought suit in the district court of Jefferson county against John T. Johnson and Samuel Remley to recover the amount of the note above mentioned, alleging same to be a partnership debt, and to foreclose the mortgage on the 735 acres of land. Both defendants were cited and answered in that suit. Johnson filed his answer on May 8, 1868, in which he set up his homestead claim, alleging, in substance, that he and his family were residing "on the northeast corner" of said 735-acre tract, using same as their home, at the time said mortgage was executed, and still continued to so use same at the time said answer was filed. His answer contained also the following allegation: "Defendant further avers that his homestead as well as that of his co-defendant, Samuel Remley, is situated on the north end of said" 735-acre tract of land. Subsequently John T. Johnson died intestate, and his widow, Elizabeth C. Johnson, was appointed administratrix of his estate. Thereafter, she was duly made party to the French suit, both in her capacity as administratrix and as surviving wife of John T. Johnson. She was duly cited in the case. On November 29, 1870, the district court rendered judgment in said suit; the judgment reciting the appearance of all parties, the hearing by the court of the pleadings, evidence, and argument of counsel. It is adjudged in such judgment that French recover the amount he sued for; and the mortgage on the 735-acre tract was foreclosed except as to two tracts of 100 acres each, which are described by metes and bounds in the judgment. One of these excepted tracts was adjudged to Remley as his homestead, and the other to Mrs. Johnson. As described in the judgment, these two tracts together form a parallelogram whose southeast corner lies at a point on the east boundary line of the 735-acre tract, 3,622 varas south of the Neches river, and whose southwest corner is 326½ varas west of said point. The tract adjudged to Mrs. Johnson forms the west half of the parallelogram, and that adjudged to Remley, the east half. The plaintiffs in error, Mrs. Tyner and Mrs. Brown, who are the children of John T. Johnson and his wife, Elizabeth Johnson, and who were then minors living with their mother, were not parties to the French suit. The undisputed testimony of Mrs. Brown in the present suit discloses that the family dwelling house and other homestead improvements of John T. Johnson were situated on the 100-acre tract adjudged to her mother in the French suit; and further shows that the family dwelling house and appurtenant improvements of Remley, on the 735-acre tract of land, were situated west of those of her father. She further testified with respect to the 735-acre tract as follows: "Said land was not divided, only Remley settled on one portion and Johnson on the other; the land was never divided. It was all in a solid piece except the two homesteads; there was no more division in it. Johnson settled on the east side and Remley on the west side."

In due time an order of sale was issued under the French judgment, and the 735-acre tract, less the two 100-acre tracts above mentioned, was sold under such order of sale. By mesne conveyances the defendant in error, John La Coste, acquired in the year 1919, and still holds, such title to the 79 acres of

land in controversy here as passed to the purchaser at such sale.

The plaintiffs in error contend that the foreclosure sale in the French suit did not affect their interest in the 735-acre tract, because the district court had no jurisdiction to order such sale, inasmuch as an administration upon the estate of their father was then open and pending in the probate court. This contention cannot be sustained for the reason that the debt involved in that suit was a partnership debt of the firm of Johnson & Remley, the land involved was partnership property, and Remley, the surviving partner, was party to the suit and to the judgment therein. As such surviving partner, Remley had authority to administer the partnership estate and wind up its affairs, independently of the probate court. The judgment against him for the partnership debt, and foreclosing the mortgage lien, together with the sale under such foreclosure, had effect to divest the plaintiffs in error of their interest in all the 735-acre tract of land, in excess of the 200 acres constituting the family home, that was sold under the judgment.

The plaintiffs in error further contend that because they were not parties to the French judgment, and notwithstanding their mother was a party, the rights of the plaintiffs in error, in the 200 acres which constituted the family homestead of their father in his lifetime, were unaffected by said judgment. We have concluded, however, that a determination of this question is not necessary to a decision of the case, and we neither express nor imply an opinion in respect to the matter. For it is our opinion that the facts hereinbefore stated show that neither John T. Johnson in his lifetime, nor any of his family after his death, had any homestead rights in the particular land in controversy in the present suit. It is shown by the undisputed testimony of Mrs. Brown that the family dwelling house and appurtenant improvements, and the portion of the 735-acre tract in actual use by the family for home purposes during the lifetime of her father, were situated on the north end of the 735-acre tract, to wit, on the 100-acre tract which was adjudged to her mother in the French suit. These facts, in and of themselves, determine substantially and approximately the locality of the 200 acres which constituted the family homestead, although the boundaries thereof were not definitely and exactly fixed thereby. Houston & G. N. R. Co. v. Winter, 44 Tex. 597. The location and outlines of such 200 acres are in some degree more definitely shown by other evidence now to be noticed. As head of the family, Johnson had the right and authority, as between himself and the other members of his family, to define and designate, so as to include the family dwelling house and the land in actual use for home purposes, the particular 200-acre parcel which was to constitute the family homestead. That he did this is manifested by his declarations contained in his answer to the French suit, supplemented by the testimony of Mrs. Brown. In such declarations is to be found evidence that the particular locality of the land in which he was claiming homestead rights was in the northeast corner of the 735-acre tract, as well as evidence of a recognition by him of Remley's homestead in the remaining portion of said north end. The undisputed testimony of Mrs. Brown supports and sheds light on these declarations or admissions of her father, in that it shows that as a matter of fact the family dwelling house and other homestead improvements were situated in the north end of the 735-acre tract, and that same were east of where Remley's homestead improvements then stood. There is no evidence that any part of the land in controversy in the present suit, which lies in the south end of the 735-acre tract, ever was used for home purposes by Johnson or his family.

We recommend that the judgment of the Court of Civil Appeals affirming the judgment of the trial court be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.