## AMES v. WILLIAMSON.
### No. 2068.

Court of Civil Appeals of Texas. Waco.
Feb. 2, 1939.

Rehearing Denied March 23, 1939.

Tom R. Mears and Harry W. Flentge, both of Gatesville, for appellant.

Tom L. Robinson and Stinnett & Stinnett, all of Gatesville, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellee, Glenn Williamson, against appellant, John Ames, to recover both actual and exemplary damages for the alleged false imprisonment of appellee by appellant. The testimony adduced at the trial, so far as necessary, will be recited in connection with the issues of law hereinafter discussed.

The case was submitted on special issues, in response to which the jury found, in substance, that appellant, in Coryell County, Texas, falsely imprisoned appellee, that the sum of $275 should be awarded appellee as compensatory damages, and that no exemplary damages should be awarded. The court entered judgment in accordance with the verdict. Appellant filed motion for new trial, which was overruled. Hence this appeal.

Appellant's first assignment of error is as follows: "The court, in some appropriate manner and way, should inform the jury that the defendant as a ranger would have had the right to approach the plaintiff at his residence in Coryell county for the purpose of investigating the alleged sheep stealing in Lampasas county and inform the said plaintiff of such mission and request said plaintiff to accompany him to help and assist him in investigating the matter and in clearing the suspicion pointing toward the plaintiff, without constituting an arrest, in the absence of force and restraint toward the plaintiff, viewing from the above, if any of the said plaintiff to resist said restraint, without being guilty of either arresting or false imprisonment, and if the plaintiff accompanied defendant under such or similar circumstances, they would answer special issue No. 1 'No'."

The testimony shows that some sheep had been stolen in Lampasas county; that Weldon Mitchell, who resided in said county, was accused of the theft. Appellee had spent the night following said theft at the home of said Mitchell. Appellant was a member of the state ranger force. He went to Gatesville, some distance out of his way, and got one Richey, a deputy sheriff of Coryell county, to accompany him. He went from there to the home of appellee. Richey introduced appellant to appellee. Appellant took him aside and had a conversation with him. According to appellee, appellant told him that he was under arrest for the theft of said sheep and that he should come with him. Appellee told his father he was under arrest and his father asked appellant to be allowed to make bond for him, which request was refused. Appellee's father testified that the reason assigned for such refusal was that he, appellant, might take appellee to Austin, or might take him to Fort Worth—he did not know what he would do. Appellee asked to be allowed to change clothes and shave. Appellant allowed him to change clothes but refused his request to be allowed to shave, with the statement that he could shave later. Appellant, Richey and appellee got in their car and went back to Gatesville, a distance of more than twenty miles. There Richey left them and appellant carried appellee to Hamilton. On the way appellant sought to obtain a confession from appellee but failed to do so. Appellant told him that if they put the "monkey pad" on him he would confess. Appellee testified that he insistently denied any connection with said theft. On arrival at Hamilton appellant inquired for some other members of the ranger force, and on failing to find them, he took appellee to the jail and turned him over to the sheriff of the county. Apparently without any further explanation, appellee was searched and placed in a cell. He remained there a little over twenty-four hours. Later appellant sent a fellow ranger to have him released. He was approximately 60 miles from home, afoot and practically without funds. Appellant denied that he told appellee he was under arrest, but claimed he asked appellee to come and go with him and clear his name

of suspicion. He testified that he used no force, but did not tell appellee that he did not have to go. Appellant testified that appellee's father did ask to be allowed to give bond but that he told him there was no bond to make, that he was investigating. The court, in submitting the issue of false imprisonment, gave a comprehensive definition of the same and appellant does not in any way complain of such definition. The assignment under consideration is a literal copy of one of appellant's objections to the manner in which the court submitted such issue and also of one of the paragraphs in his motion for new trial.

■ This case was submitted on special issues. The methods of submitting cases by general charge and upon special issues are so widely divergent that a case must be submitted by one or the other method, and not in part by each. It is accordingly held to be error for the court to give a general charge on the law of the case where same is submitted upon special issues. Breeding v. Naler, Tex.Civ.App., 120 S.W.2d 888, 891 (second column) and authorities there cited. Appellant's liability in this case depended upon the answer of the jury to said first special issue. An instruction to the jury that upon their finding a certain combination of facts to be true, they should answer said issue no, was equivalent to telling them that under such circumstances they should find for the defendant. Such instructions have been expressly disapproved on the ground that the same constituted general charges. Texas & N. O. R. Co. v. Harrington, Tex.Com.App., 235 S.W. 188, 189 et seq., par. 1, and authorities there cited; Worden v. Kroeger, Tex.Com.App., 219 S.W. 1094, 1095, par. 1; Anderson & Co., Inc. v. Reich, Tex.Com.App., 260 S.W. 162, 163, par. 6; Connellee v. Nees, Tex.Com.App., 266 S.W. 502, 503, par. 4; Mayfield Co. v. Pepper, 129 Tex. 307, 103 S.W.2d 737, pars. 1 and 2; Vetter v. Nicholson, Tex.Civ.App., 106 S.W.2d 1064, pars. 5 and 6; Lamb v. Collins, Tex.Civ.App., 93 S.W.2d 490, par. 1; Winters Mutual Aid Ass'n v. Redding, Tex.Com.App., 49 S.W.2d 1095, 1097, par. 10, and authorities there cited; Quanah, A. & P. Ry. Co. v. Eblen, Tex. Civ.App., 55 S.W.2d 1060, 1065, par. 13; 41 Tex.Jur. p. 1181 et seq., secs. 325, 326, 327. Appellant's objections to the court's charge as recited in the assignment under consideration were properly overruled.

■■ Appellant, in his second and last assignment of error, complains of the refusal of the court to permit him to introduce evidence showing that appellee's general reputation in the community in which he lived as a peaceable, law abiding citizen was bad. Appellee, in his petition, asked for actual and exemplary damages. He alleged that as a result of the treatment received by him he suffered inconvenience, mental anguish and humiliation. He did not charge injury to his reputation or ask for compensation therefor. Appellant did not file any separate bill of exceptions but relies on the recitals contained in the stenographer's transcript of the evidence filed herein as a statement of facts. It appears therefrom that appellant placed his witness, Charlie Mann, on the stand and asked him if he knew appellee's general reputation in the community in which he lived as a peaceable, law abiding citizen. Appellee, by his counsel, objected on the ground that such evidence was not admissible on either the issue of actual or exemplary damages but that only evidence of general reputation on the particular trait involved would be admissible. The witness did not answer the question and what his answer would have been is nowhere shown. The court indicated that he would permit appellant's counsel to interrogate the witness on his knowledge of appellee's general reputation on the particular trait involved, whereupon counsel for appellant asked said witness whether he knew appellee's general reputation in that community as being a thief and the witness stated that he did not. Counsel for appellant then asked the witness whether he had ever heard such reputation discussed, to which question the court sustained an objection. Counsel for appellant, for the first time, said, "We take a bill." The general rule is that when a party complains of the refusal of the court to permit his own witness to answer a question propounded by him, he must show what the answer of the witness to the question propounded would have been. When such showing is not found in the transcript of the evidence, it may be made by incorporating the excluded evidence in a formal bill of exception. Absent such showing, no issue is presented for review. Ullman, Stern & Krausse v. Colson, Tex. Civ.App., 58 S.W.2d 1039, 1040, par. 2; Johnson v. Johnson, Tex.Civ.App., 118 S.W.2d 338, par. 1, and authorities there

cited; Miller v. Dunagan, Tex.Civ.App., 99 S.W.2d 434, par. 4; Luhning v. Stewart, Tex.Civ.App., 103 S.W.2d 184, par. 1, and authorities there cited; Joy v. Craig, Tex. Civ.App., 94 S.W.2d 524, 526, par. 4; Carter v. Green, Tex.Civ.2d 1069, par. 8; Goeke v. Baumgart, Tex.Civ. App., 92 S.W.2d 1047, par. 7; Jones-O'Shaughnessy Lbr. Co. v. Dean, Tex.Civ. App., 88 S.W.2d 567, par. 5; McCombs v. Stewart, Tex.Civ.App., 117 S.W.2d 869, 872, par. 7, and authorities there cited. Said assignment is overruled.

The judgment of the trial court is affirmed.